**LAW OFFICES OF NOLAN KLEIN, P.A.**                    ATTORNEYS & COUNSELORS

**112 W. 34TH STREET, SUITE 1800**
**NEW YORK, NY 10120**
**PH: (646) 560-3230**

**5550 GLADES ROAD, SUITE 500**
**BOCA RATON, FL 33431**
**PH: (954) 745-0588**

www.nklegal.com                                          Nolan Klein, Esq.
                                                         klein@nklegal.com

April 24, 2023

**VIA ECF**
Honorable Edgardo Ramos
Southern District of New York
40 Foley Square
New York, NY 10007

        *Re:*    *Chavez, et. al v. The Fifth Labor, et al.*
                SDNY Case No.: 1:22-cv-07781

Dear Judge Ramos:

      Plaintiff, Juanita Paulina Chavez ("Plaintiff") and Defendants, The Fifth Labor LLC ("Fifth Labor") and Anthony Rhodes (collectively "Defendants") respectfully file this renewed request for Your Honor to approve the *mediated* settlement agreement reached in this case, pursuant to *Cheeks v. Freeport Pancake House*, 796 F. 3d 199 (2d Cir. 2015). A copy of the executed settlement agreement (the "Agreement") and an addendum thereto (changing payment timing only) are annexed herein as **Exhibit A**.

## Settlement Amount

      The Agreement resolves all claims brought under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), by payment from Defendants in the amount of $25,000.00. This settlement was reached by mediation, conducted through this Court's mediation program. For the reasons outlined below, the Court should approve this $25,000.00 settlement as a fair and reasonable compromise of the claims raised against Defendants in this case.

## Factual Background

      On September 12, 2022, Plaintiff, Juanita Paulina Chavez, commenced this action, alleging that Defendants failed to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), as well as failure to provide written notices required by the Wage Theft Prevention Act ("WTPA"). *D.E. 1*. Specifically, Plaintiff alleged that she was employed as a janitor within the Defendants' cleaning business, and that she was not paid overtime for hours worked over 40 in a workweek, was not paid "spread of hours" when she worked 10 hours in a workday and was not provided documentation required by the WTPA. The breakdown of Plaintiff's alleged damages are as follows:

Plaintiff worked for Defendants for 94 weeks, from November 2020 through August 2022. She was paid $15.00 per hour until May 2021, and $15.50 thereafter. Accordingly, Plaintiff was owed $7.50 in overtime premium until May 2021, and $7.75 in overtime premium thereafter. Plaintiff alleges that she worked 70 hours per week but was not paid an overtime premium for the 30 hours of weekly overtime. As such, Plaintiff calculates that she was owed $225.00 per week in unpaid overtime premium through May 2021, and $232.50 per week thereafter. This results in a total overtime premium owed of $21,660. There are no other FLSA components of Plaintiff's claims. She also asserted WTPA claims (failure to provide wage notices totaling $10,000 in statutory penalties and NYLL "spread of hours" claims totaling $6,975, calculated as one extra hour at minimum wage for every day spent working for Defendants in this case).

Defendants filed their answer and affirmative defenses on February 7, 2023. *D.E. 14*. Defendants dispute whether Plaintiff was exempt from all wage and hour provisions of the FLSA and NYLL as well as the wage notification statement and pay stub specifications. Defendant's records indicate that to the extent Plaintiff is not exempt, Plaintiff is owed at most the sum of $7000.00 as overtime pay. Defendant recognizes that Plaintiff's consistent recording of 70 hours per week may be seen as implausible or not credible. Moreover, Plaintiff has no written records (to Defendants' knowledge) to document her hours consistent with her claim. Notwithstanding these fundamental flaws in Plaintiff's case, Defendant also recognizes that their own legal fees would likely well exceed the settlement amount by up to 300-400%. Moreover, as Plaintiff has noted, there is risk in continuing litigation and proceeding to trial. In the event of a verdict in favor of Plaintiff (should she survive a motion for summary judgment) could be as much as Defendant' own legal fees. In addition, Defendants would be liable for Plaintiff's legal fees in addition to statutory fines, liquidated damages of 100% upon a finding of willfulness and interest on any unpaid wages. From a purely pragmatic perspective, Defendants prefer to settle this case now and avoid additional legal fees and the risks associated with litigation and, potentially, trial. Were it not for the massive exposure, Defendant would likely litigate this matter to verdict if necessary.

On January 24, 2023, this Court referred this matter to the Court annexed mediation program. *D.E. 17*. Mediation was scheduled to take place on March 1, 2023. Ahead of the mediation, the parties exchanged significant data. Plaintiff first provided a spreadsheet showing amount owed pursuant to her recollection, and without the benefit of specific documentation. The amounts owed to Plaintiff, as set forth above, is based on that data. Defendants then provided time and pay records for both Plaintiffs; specifically, Defendants provided agreements of the parties, time, and pay records.

On March 1, 2023, the parties attended mediation. Although Defendants continued to take the position that Plaintiff is not owed anything, all parties acknowledged that they face risks of not being able to prevail on some or all of their claims and/or defenses if this case were to proceed to trial. The parties therefore reached an agreement whereby Defendants will pay Plaintiff $25,000 to resolve this matter, inclusive of Plaintiff's legal fees and costs. *Exhibit "A."* The agreement in this case releases Defendants from FLSA and other labor related claims. As set forth more fully below, the settlement is fair, reasonable, and the product of arm's length negotiations at mediation. For these reasons and those set forth in further detail below, the settlement should be approved.

After the deduction of legal fees payable to Plaintiff's counsel (Plaintiff's counsel has agreed to waive costs) totaling one third (or $8,330) this results in a settlement payment to Plaintiff of $16,670. *In terms of her FLSA claims*, Plaintiff's contention was that she was owed $21,660 in

unpaid overtime.[1] As such the settlement amount is a substantial share of the amount Plaintiff is owed on her FLSA law claims, even assuming full liability on the part of these Defendants (who contest liability in this case). This clearly reflects a reasonable compromise between the parties' disputed positions in this matter. This settlement considers the costs and the uncertainty of protracted litigation and was reached during a mediation session with Dennis Drebsky, Esq. an experienced mediator and a member of this District's Mediation Panel.

### **Fairness of the Settlement Agreement**

Pursuant to *Cheeks*, "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court." *Cheeks*, 796 F.3d at 206; *see also Wolinsky v. Scholastic Inc.,* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). In evaluating the fairness of the agreement, the District Court may utilize the factors set forth by *Wolinsky,* 900 F. Supp. 2d 332, 335. Those factors are:

> (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotations omitted).

It is respectfully submitted that all *Wolinsky* factors require approval of the mediated settlement agreement. As to the first factor, Plaintiff proposed ultimate recovery (*after* deduction of legal fees) represents a significant percentage of her total FLSA claims. *Chowdhury v. Brioni America, Inc*., 2017 WL 5953171 at *2 (S.D.N.Y. 2017)(net settlement of 40% of FLSA plaintiffs' maximum recovery is reasonable); *Redwood v. Cassway Contracting Corp*., 2017 WL 4764486 at *2 (S.D.N.Y. 2017) (net settlement of 29.1% of FLSA plaintiffs' maximum recovery is reasonable); *Beckert v. Ronirubinov*, 2015 WL 8773460, at *2 (S.D.N.Y. 2015) (approving a settlement constituting 25% of the maximum possible recovery). Even absent the significant litigation risks in this case (discussed further below), this clearly represents a fair and reasonable settlement. As to the second factor, this agreement resolves a *bona fide* dispute over genuinely contested issues, namely whether Plaintiff is an independent contractor or employee, and whether, and to what extent, Plaintiff was not paid monied owed. These are contested issues which will require significant litigation, attorney time, and expense. Plaintiff and Defendants believe that is in their best interests to resolve on the current terms rather than to be subject to protracted and expensive additional litigation, including the burdens and risks thereof.

Next, as to the third factor, the parties face serious litigation risks as to both liability and damages. Plaintiff risks being proven to be independent contractors and entitled to nothing, or risks Defendants' records disproving a substantial portion of her claims, and Defendants risk having to pay more to Plaintiff than was agreed herein, as well as untold additional legal fees to their own counsel, and if Plaintiff prevails, to Plaintiff's counsel as well. As to the fourth factor and fifth factor, the arm's length nature of the negotiations, including through an experienced

---

[1] The prior motion to approve indicated that Plaintiff was owed $20,925. In re-calculating the math for this renewed motion, it appears that the number should have been $735 higher; the difference should not be material to the analysis.

mediator, all weigh heavily in favor of *Cheeks* approval. *See Meigel v. Flowers of the World, NYC, Inc.*, 2012 WL 70324, at *1 (S.D.N.Y. Jan. 9, 2012) ("[T]ypically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement"); *Hernandez v. C-Penn Foods Inc.*, 2011 U.S. Dist. LEXIS 144798, at *2 (S.D.N.Y. Dec. 13, 2011) ("[G]iven the disputed issues of fact relating to Plaintiff's wage claims and the fact that the settlement was reached pursuant to arm's length negotiations, the Court finds that the settlement agreed to in this action is fair and reasonable."). The negotiations in this case were not only arm's length but resulted from mediation through a third-party mediator appoint through this Court; as such, there is no possible question that negotiation was at arm's length.

## **Attorney's Fees and Costs**

As to amount, Plaintiff's Attorney's fees in FLSA matters may be calculated as either (a) a percentage of recovery or (b) as the product of a reasonable hourly rate and the reasonable number of hours expended (the loadstar method). *Flores v. Food Express Rego Park, Inc.*, 2016 U.S. Dist. LEXIS 11351 at *6-7 (E.D.N.Y. 2016) *citing McDaniel v. City of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010)). As to the percentage of recovery method, "[i]n this Circuit, courts typically approve attorney's fees that range between 30 and 33[percent]." *Thornhill v. CVS Pharm., Inc.*, 2014 U.S. Dist. LEXIS 37007, *3 (S.D.N.Y. 2014); *Briggs v. DPV Transp., Inc.*, 2021 U.S. Dist. LEXIS 245830, *5 (S.D.N.Y. 2021)("Courts in the Second Circuit routinely award attorneys' fees in FLSA settlements of one-third of the total recovery"); *Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. 2013)(same). "Even where attorney's fees are calculated with the percentage method, courts must still independently ascertain the reasonableness of the requested fees." *Mobley v. Five Gems Mgmt. Corp.*, 2018 U.S. Dist. LEXIS 59104 (S.D.N.Y. 2018) *citing Run Guo Zhang v. Lin Kumo Japanese Rest. Inc*., 2015 U.S. Dist. LEXIS 115608, at *2 (S.D.N.Y. 2015). "To do so, courts typically perform a lodestar "cross-check": They compare the fees generated by the percentage method with those generated by the lodestar method." Id. *citing Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)(encouraging the practice "of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage"). "[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court.' *Id.*

Here, as permitted by the relevant retainer agreements, Plaintiff's counsel seeks 1/3 of the total recovered as contingency legal fees in this case, or $8,330. Plaintiff's counsel waives the right to recover anything additional as costs. As to the loadstar "cross-check," timesheets for counsel are attached as Exhibit "B." There are three timekeepers reflected on the attached timesheets. Nolan Klein, Esq. has been practicing law since 2003, and since 2012 in New York. He was admitted to practice in this District in 2013 and is also admitted in the Southern, Middle and Northern Districts of Florida, the Eastern, Western, and Northern Districts of New York, the Southern and Northern Districts of Texas, and the Eleventh and Second Circuit Courts of Appeal. Mr. Klein has represented clients in almost 1000 lawsuits, including approximately 850 lawsuits in federal court, and more than one hundred FLSA cases (as set forth in greater detail below). Mr. Klein has appeared on national media as a legal and litigation expert, and has taught several national CLE classes, including CLE classes on representing clients in FLSA litigation. Mr.

Klein's time is billed at $450.00 an hour in this case. Melanie Delgado, received her law degree in Mexico in 2020 from the Universita Automona de Nuevo Leon, and works for Plaintiff's counsel as a paralegal focused on the needs of Spanish speaking employees in labor and employment matters. Ms. Delgado is billed at $175.00 per hour. Laura Adame is an attorney licensed to practice law in New York and in this District. She was admitted in New York in 2019, and has experience as counsel to the Assistant Speaker of the State of New York and has first chair trial experience representing government employee in the Office of Administrative Trials and Hearings. Ms. Adame is billed at $325.00 per hour.

### Conclusion

For the foregoing reasons, counsel for all parties jointly and respectfully request that the Court approve the parties' settlement agreement as fair and reasonable and dismiss this action with prejudice. *See Reyes v. Altamarea Group, LLC*, 2011 U.S. Dist. LEXIS 115984, at *14-*17 (S.D.N.Y. 2011).

Respectfully submitted,

*/s/ Nolan K. Klein*
Nolan K. Klein, Esq.

cc:   Joseph Carbonara, Esq. (via ECF)